IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KAREN KUNG,<br><br>       Plaintiff,<br><br>  vs.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security<br>Administration,<br><br>       Defendant. | Civil No. 25-00013 MWJS-WRP<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

**INTRODUCTION**

      In this appeal from the denial of Social Security disability insurance benefits, Plaintiff Karen Kung contends that the Commissioner committed reversible error by failing to identify her left hip impairment as severe.  Kung also argues that the Commissioner did not articulate sufficient reasons to reject Kung's testimony about the symptoms of her impairments.  And Kung contends that the Commissioner failed to properly analyze the medical opinions in the record.

      The first of Kung's arguments is not persuasive.  But the court agrees with her second argument, and REVERSES the Commissioner's decision and REMANDS for further administrative proceedings on that basis.  The court declines to resolve the merits of Kung's third argument at this time.

# BACKGROUND

Social Security regulations "set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520).

At step one, the Commissioner assesses whether the claimant is presently working in a substantially gainful activity. *Id.* If the claimant is not so employed, then the Commissioner proceeds to step two and asks whether the claimant has at least one severe impairment. *Id.* at 724-25. For any claimant with at least one severe impairment, the Commissioner proceeds to step three. *Id.* There, the Commissioner considers whether the claimant's impairments, individually or together, meet or medically equal the severity of an impairment that would qualify an individual as disabled without regard to age, education, or work experience. *Id.* at 724, 727. And if a claimant is not found to be disabled at step three, then the Commissioner must consider all impairments—both severe and non-severe—and make a finding about the claimant's residual functional capacity, or "RFC,"[1] to determine whether the claimant can perform any past work (step four) or work that exists in significant numbers of jobs in the national economy (step five). *Id.* at 724-25.

---

[1] The RFC is a measure of "the most one can still do despite one's limitations." *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (cleaned up).

2

The Commissioner does not, of course, personally decide Social Security applications for disability insurance benefits.  The task is initially delegated to a "network of local Social Security Administration (SSA) field offices and State agencies." *Disability Determination Process*, Soc. Sec. Admin., https://www.ssa.gov/disability/determination.htm (last visited June 24, 2025).  If a claim is denied, the claimant must seek reconsideration of that initial determination.  *Smith v. Berryhill*, 587 U.S. 471, 476 (2019).  And if reconsideration is denied, the claimant "must request a hearing," which is conducted by an Administrative Law Judge, or ALJ.  *Id.*  Thereafter, the claimant must seek discretionary review of the ALJ's decision by the Appeals Counsel.  *Id.*  Only after proceeding through each of these steps may a claimant "obtain review from a federal court."  *Id.* at 475-76.

In this case, Kung exhausted each of these administrative steps.  In the earliest stages, however, her claims focused on lower back pain and an injury to her right hip.  *See, e.g.*, ECF No. 6-4, at PageID.111 (Administrative Record (AR) at 95).  She does not appear to have pressed, in any significant way, an impairment to her left hip.  For example, after the initial denial of her claim and request for reconsideration, Kung asked for a hearing before an ALJ.  And at that hearing, when asked to describe "what pain you're experiencing and the severity on an average day," Kung responded that "there's a constant dull pain that's in the lower back and the *right* hip."  ECF No. 6-3, at PageID.63 (AR at 48) (emphasis added).  At various other points in the hearing, she

3

similarly focused on her lower back and right hip—without mentioning any impairment, let alone substantial impairment, to her left hip.  *See, e.g., id.* (explaining that she puts ice on her "lower back" and "*right* hip") (emphasis added); *id.* at PageID.57 (AR at 42) (explaining that she has "an L-5, S-1 disc bulge" and "a right lateral tear in my *right* hip" (emphasis added)); *id.* at PageID.55 (AR at 40) (explaining that when she drives too long, her "back begins to hurt" and she has "a lateral tear in [her] *right* hip so that causes pain also" (emphasis added)).

On February 6, 2024, the ALJ issued a written decision denying Kung's application for disability insurance benefits.  *Id.* at PageID.30-43 (AR at 15-28).  At step one, the ALJ found that Kung had not engaged in substantial gainful activity since January 15, 2020.  *Id.* at PageID.35 (AR at 20).  At step two—consistent with Kung's testimony at the hearing—the ALJ found that Kung's severe impairments were limited to "degenerative disc disease of the lumbar spine and degenerative joint disease of the right hip with tear acetabular labrum."  *Id.*  The ALJ also identified a number of non-severe impairments.  *Id.* at PageID.36 (AR at 21).  But the ALJ did not identify any injury to Kung's left hip, either as severe or non-severe.  *Id.*

The ALJ then proceeded through the remaining steps.  At step three, the ALJ found that Kung's impairments did not meet or medically equal the severity of a listed impairment.  *Id.*  The ALJ therefore considered "the entire record" to determine Kung's RFC.  *Id.* at PageID.37 (AR at 22).  This evidence included Kung's testimony at the

4

hearing that her symptoms significantly restricted her and precluded her from work. *Id.* at PageID.55, 57, 60-69 (AR at 40, 42, 45-54).  And while the ALJ had not identified any left hip impairment at step two, in assessing Kung's RFC, the ALJ acknowledged more recent medical records "indicat[ing] the claimant reported worsening left hip pain, and that her left hip currently limits her more than the right." *Id.* at PageID.39 (AR at 24); *see also id.* (noting that at a recent medical appointment in September 2023, Kung "reported new pain in the left lateral hip, associated with tightness in the hip girdle muscles, which was similar to her right hip pain").  The ALJ nonetheless did not credit Kung's symptom testimony; while the ALJ found no evidence of malingering, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[2]  *Id.* at PageID.38 (AR at 23).  Instead, the ALJ found that Kung had an RFC that allowed her to perform light work with certain restrictions. *Id.* at PageID.37-38 (AR at 22-23).  This meant that at step four, Kung could perform work she had done in the past—as an administrative assistant, secretary, and personnel

---

[2]     As the Ninth Circuit has explained, "ALJs commonly use the phrase 'not entirely consistent' the same way the ALJ did in this case—to mean that the claimant's testimony is *inconsistent* with other evidence in the record." *Smartt v. Kijakazi*, 53 F.4th 489, 499 n.2 (9th Cir. 2022).  That said, ALJs "might consider replacing the phrase 'not entirely consistent' with simply 'inconsistent'" to avoid misunderstandings.  *Id.*

clerk—as they are generally performed.³ *Id.* at PageID.42 (AR at 27). The ALJ therefore denied Kung's application without proceeding to step five. *Id.* at PageID.43 (AR at 28).

Kung sought the discretionary review of the Appeals Council, and in her submissions, she offered additional evidence concerning her left hip pain. *See* ECF No. 8, at PageID.1355-56 (summarizing evidence). The Appeals Council concluded that "this evidence does not show a reasonable probability that it would change the outcome of the decision," ECF No. 6-3, at PageID.17 (AR at 2), and denied Kung's request for review, *id.* at PageID.16 (AR at 1), making the ALJ's decision the final decision of the Commissioner. Kung's appeal to this court followed, and this court has jurisdiction under 42 U.S.C. § 405(g). The court elects to decide the appeal on the briefs as authorized by Local Rule 7.1(c).

## STANDARD OF REVIEW

This court must affirm a disability determination unless "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). This standard is deferential, requiring "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

³ The decision states in one place that the ALJ "finds that the claimant is *unable* to perform past relevant work as generally performed," ECF No. 6-3, at PageID.42 (AR at 27) (emphasis added)—but this appears to be a typo, as it also clearly states that Kung is "capable of performing past relevant work as a[n] administrative assistant, secretary, and personnel clerk," and denies Kung's application on that basis, *id.* at PageID.42-43 (AR at 27-28). In any event, Kung does not appeal based on this discrepancy.

*Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up).  That said, "substantial" means "more than a mere scintilla."  *Id*. (cleaned up).

Moreover, the court may only defer to those reasons the Commissioner—here, acting through an ALJ—actually offers.  "[L]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).  And so a district court cannot affirm the Commissioner based merely on "what it assume[s] the ALJ to have determined," for "meaningful review of an administrative decision requires access to the facts and reasons supporting that decision."  *Id.* at 1226; *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[The court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely.").

## DISCUSSION

Kung presents the issues on appeal as (1) whether the Commissioner "err[ed] by failing to consider Ms. Kung's left hip impairment to be a severe impairment"; (2) whether the Commissioner offered sufficient reasons "for discrediting Ms. Kung's testimony"; and (3) whether the Commissioner erred in analyzing the medical opinions.  ECF No. 8, at PageID.1349.  The court considers each of these issues in turn.

7

1. Kung first seeks reversal on the ground that the Commissioner, acting through the ALJ, failed to find Kung's left hip impairment to be severe at step two of the five-step sequential process. In his responsive briefing, the Commissioner does not dispute that Kung's left hip impairment qualifies as a severe impairment. *See* ECF No. 10. And the Commissioner concedes that the ALJ "did not mention Plaintiff's left hip at step two." *Id.* at PageID.1376. But the Commissioner counters with two points.

First, the Commissioner notes that it is "hardly surprising" that the ALJ did not mention Kung's left hip, because Kung herself "did not mention her left hip when asked [at the hearing before the ALJ] to list every condition that limited her ability to work." *Id.* at PageID.1376 n.1. This is a fair point, one that explains why the ALJ might have written her decision the way she did. But the Commissioner does not explain why this *explanation*—persuasive as it may be—would *excuse* a conceded failure to identify the left hip as a severe impairment. That is to say, the Commissioner does not argue that Kung failed to exhaust the issue or that she should be held to have forfeited it. The Commissioner has, therefore, himself forfeited any argument to that effect.[4]

---

[4]     The court must always, on its own initiative, consider potential jurisdictional shortcomings. So, for example, if a party fails to exhaust available administrative remedies—that is, the various layers of agency review detailed earlier, *see supra* p. 3—then the court cannot exercise judicial review, regardless of whether the Commissioner has raised the failure to exhaust. *Smith v. Berryhill*, 587 U.S. 471, 475-76 (2019). By contrast, a failure to raise a particular issue before an ALJ—what is typically referred to as issue exhaustion—is not jurisdictional. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (explaining that the requirement may be excused when necessary to avoid manifest injustice). And "a party may waive or forfeit the benefit of a nonjurisdictional

The Commissioner has a second response: that any error at step two would not have tainted the ALJ's assessment of Kung's RFC or the ALJ's findings at step four. In support of this proposition, the Commissioner cites the Ninth Circuit's decision in *Buck v. Berryhill*, in which that court explained that "[s]tep two is merely a threshold determination meant to screen out weak claims," and that it "is not meant to identify the impairments that should be taken into account when determining the RFC." 869 F.3d 1040, 1048-49 (9th Cir. 2017). In assessing an RFC, an ALJ is required to consider all impairments, whether severe or not. *Id.* And so the "RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* More to the point, the Commissioner argues that the RFC here *was* exactly the same as it would have been if the ALJ had identified Kung's left hip impairment as severe; as the Commissioner explains, the ALJ still considered the medical evidence concerning that left hip impairment in settling on an RFC. ECF No. 10, at PageID.1377-78; *see also* ECF No. 6-3, at PageID.36 (AR at 21).

This second argument is persuasive, as far as it goes. If the ALJ adequately considered the medical evidence at the RFC stage, then any failure at step two to label the left hip impairment as severe would be harmless. *See Buck*, 869 F.3d at 1049. And while it leaves open the question of whether the ALJ *did* adequately address the medical

---

rule," *VHT, Inc. v. Zillow Grp., Inc.*, 461 F. Supp. 3d 1025, 1037 (W.D. Wash. 2020) (cleaned up), which is what the Commissioner has done here.

9

evidence, that question is more properly viewed as calling for a review of the ALJ's rationales at the RFC stage—a matter taken up below—rather than an assessment of whether the ALJ committed a labelling error at step two.

In her reply brief, Kung offers one additional wrinkle. She contends that the Commissioner did not err merely through the ALJ's failure at step two to identify her left hip impairment as severe, but also through the Appeals Council's failure to consider the supplemental evidence that Kung offered after the ALJ's decision. ECF No. 11, at PageID.1392. But the Appeals Council wrote that, in its view, "this evidence does not show a reasonable probability that it would change the outcome of the decision." ECF No. 6-3, at PageID.17 (AR at 2). And the outcome of the decision was driven, not by step two, but rather by the ALJ's findings as to Kung's RFC. Here again, then, the question is not whether the ALJ erred at step two, but whether the Commissioner—this time through the Appeals Council—adequately considered evidence concerning Kung's RFC. The court turns to that question next.

2. When the Commissioner finds that a claimant is not malingering but instead has a severe impairment "which might reasonably produce the pain or other symptoms alleged," the Commissioner can "reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (cleaned up); *see also Orn*, 495 F.3d at 635. Those reasons "must be sufficiently specific to allow a reviewing court to

conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter*, 806 F.3d at 493 (cleaned up).

The Commissioner did not satisfy these standards here. As an initial matter, although the ALJ's decision addressed Kung's activities of daily living, the ALJ did not offer any meaningful explanation for why those activities would contradict Kung's symptom testimony. And, to his credit, the Commissioner disavows any reliance on those activities as grounds for discrediting Kung's symptom testimony. ECF No. 10, at PageID.1381 ("The ALJ discussed Plaintiff's allegations about her daily activities, but never suggested that such activities provided a basis for discounting her reports about the limiting effects of her impairments."). It follows that if there are "specific, clear and convincing reasons" for discounting Kung's symptom testimony, *Brown-Hunter*, 806 F.3d at 493, they must be found elsewhere.

The Commissioner contends that sufficient reasons can be found in the ALJ's decision of "medical evidence that contradicted Plaintiff's claims of disabling impairments." ECF No. 10, at PageID.1379. It is true that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id.* (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)); *see also Smartt*, 53 F.4th at 498-500. But the ALJ's decision did not identify any specific way in which the "medical record" contradicted Kung's testimony here. To be sure, the

11

decision generally states that the record evidence "does not support the alleged severity of symptoms and degree of limitations," observing that lumbar spine imaging, x-rays, and MRIs do not corroborate Kung's testimony. ECF No. 6-3, at PageID.38 (AR at 23). But the Commissioner does not rely on these observations in his briefing, and for good reason: the Ninth Circuit has made clear that "it is the very nature of excess pain to be out of proportion to the medical evidence," *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990), and an ALJ therefore "may not discredit a claimant's subjective testimony" on the ground that "no objective medical evidence" supported the testimony "regarding the severity of subjective symptoms," *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The Commissioner instead points to the opinions of Louis Pau, M.D., who conducted an in-person examination of Kung and reviewed her medical records. ECF No. 10, at PageID.1379. In particular, the Commissioner relies on Dr. Pau's opinion that if he were doing "an independent medical evaluation based on [Kung's] spine, she would receive a 0% disability." ECF No. 6-3, at PageID.41 (AR at 26). The problem with this argument is that the ALJ expressly declined to rely on that opinion; as the ALJ wrote, it was "unclear what criteria Dr. Pau was utilizing to assess the percentage of rating and in any case such criteria would be different than the Social Security disability regulations applicable herein," and the ALJ therefore found Dr. Pau's opinion to be

12

"unpersuasive." *Id.* The court cannot affirm the ALJ's decision to discredit Kung's symptom testimony based on a medical opinion the ALJ did not credit.[5]

Next, the Commissioner contends that the ALJ properly discounted Kung's symptom testimony because her "course of treatment has generally been conservative and minimally invasive." *Id.* at PageID.39 (AR at 24). Granted, the Ninth Circuit has confirmed that an ALJ may use "[e]vidence of conservative treatment" to discount a claimant's testimony regarding the severity of their impairment. *Smartt*, 53 F.4th at 500 (cleaned up). But this court cannot affirm an ALJ's reliance on an alleged conservative course of treatment when neither the ALJ's decision nor the administrative record reveals evidentiary support for the proposition "that more aggressive treatment options [we]re appropriate or available." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). And here, the ALJ merely noted that Kung has "undergone physical therapy, chiropractic care, and injections, as well as radiofrequency ablation," and that Kung "said surgery was discussed but she was hesitant to proceed with surgery." ECF No. 6-3, at PageID.39 (AR at 24). Nothing in the ALJ's written decision explains why any of

---

[5]     The ALJ's decision separately notes that the physical examination findings "appear inconsistent with the claimant's allegations," ECF No. 6-3, at PageID.38 (AR at 23)—apparently in reference to Dr. Pau's evaluation of Kung—but the ALJ does not offer any reasoned basis supporting that conclusion. The evidence in the administrative record, which the ALJ summarizes, merely indicates that objective medical evidence did not corroborate Kung's symptom testimony. But again, it is well-settled that an "ALJ may not discredit a claimant's subjective testimony" on the ground that "no objective medical evidence" supported the testimony "regarding the severity of subjective symptoms." *Light*, 119 F.3d at 792.

13

this extensive treatment history contradicts Kung's symptom testimony or otherwise serves as a valid basis to discredit it. None of it shows that Kung's treatment was conservative or that Kung rejected a more aggressive form of treatment that was available to her.

The Commissioner argues that injections might, in some circumstances, constitute conservative treatment, ECF No. 10, at PageID.1380, but the ALJ did not explain why—or whether—injections should be considered a conservative course of treatment under the circumstances presented here.[6] It is equally unclear why the ALJ might have concluded that Kung could have received more aggressive appropriate forms of treatment. To the extent the ALJ had surgery in mind, the administrative record indicates that certain types of surgery may *not* have been appropriate: the notes of orthopedic surgeon Scott Crawford, M.D., record that he "would not recommend any aggressive surgical treatment of [Kung's] labral tear" because of the "very poor prognosis with hip preservation surgery when osteoarthritis is present." ECF No. 6-8,

---

[6] Nor is it the sort of characterization that might go without saying in light of prior precedents or common sense. After all, the Ninth Circuit has, in at least some contexts, expressed doubt that "epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). And at least one of Kung's doctors—while not relied on by the ALJ—appears to have characterized injections not as a conservative form of treatment, but as an invasive one. *See* ECF No. 6-8, at PageID.903 (AR at 882) (Treatment Notes of Michael Yamazaki, M.D.) (ordering an MRI because Kung "fe[lt] that her low back pain . . . ha[d] persisted despite conservative care," and so she was "considering more invasive options such as injections / surgery").

14

at PageID.976 (AR at 955) (emphasis omitted).  And the ALJ offered no reasoned basis for concluding that another type of surgery would be appropriate.  As a consequence, to affirm on this ground, the court would have to rely on "what it assume[s] the ALJ to have determined."  *Bray*, 554 F.3d at 1226.  But it is well-settled that the court may not affirm based on "*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Id.* at 1225.

As a final salvo, the Commissioner argues that the ALJ properly discounted Kung's symptom testimony because Kung reported needing to use an assistive device—a cane—to walk, but "it was never prescribed."  ECF No. 10, at PageID.1380.  As the Commissioner notes, the ALJ found that the "evidence fails to demonstrate that an assistive device is medically necessary."  ECF No. 6-3, at PageID.40 (AR at 25).  The ALJ further found that the "evidence suggests the claimant sought an assistive device, rather than the provider finding it medically necessary."  *Id.* at PageID.36 (AR at 21).  It is at least conceivable that the ALJ could have offered specific, clear, and convincing reasons for why these findings are sufficient to undermine the credibility of Kung's symptom testimony.  But the court cannot assume or intuit what the ALJ was thinking; the ALJ must offer those reasons herself.  Her written decision does not do so.

To sum up:  because the ALJ did not offer "specific, clear and convincing reasons" for discounting Kung's symptom testimony, *Brown-Hunter*, 806 F.3d at 493, and because the ALJ's decision to deny Kung's application for disability insurance

15

benefits hinged on the discounting of that testimony, the court cannot affirm the decision.

3. Kung raises an alternative argument in support of reversal: that the ALJ did not correctly analyze the medical opinions in the administrative record. ECF No. 8, at PageID.1369-73. The Commissioner responds by defending the ALJ's analysis. ECF No. 10, at PageID.1382-85.

The court need not, and so does not, resolve these arguments at this time. *Accord Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (remanding for one reason and "declin[ing] to reach [an] alternative ground"). The Commissioner does not dispute that if the ALJ failed to properly consider Kung's symptom testimony, then remand is required even if the ALJ properly analyzed the medical opinions. And the Commissioner concedes that a claimant need not present medical opinions or medical evidence to corroborate her symptom testimony. *See supra* p. 11.

At the same time, further administrative proceedings on remand may result in a grant of benefits to Kung, making it unnecessary to resolve the other issues. Alternatively, further administrative proceedings may shed additional light on the relative merits of Kung's remaining arguments, facilitating judicial review in a future appeal. For example, one of Kung's arguments is that the ALJ rejected her doctor's medical opinion in part because it was based on Kung's subjective complaints. ECF No. 11, at PageID.1401. If, on remand, the ALJ abides by her decision to discount Kung's

symptom testimony and supplies specific, clear, and convincing reasons for doing so, those reasons might also bear on whether the ALJ's assessment of the doctor's medical opinion is sound.  The court therefore does not resolve this last issue presented, and Kung remains free to present it anew if a future appeal becomes necessary.

## CONCLUSION

The Commissioner's decision denying Kung's applications for Social Security disability insurance benefits is REVERSED and REMANDED for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED:  June 24, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

Civil No. 25-00013 MWJS-WRP; *Karen Kung v. Frank Bisignano*; ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS